AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
MAY 07 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

In the Matter of the Search of  )
*(Briefly describe the property to be searched or identify the person by name and address)*  )
)   Case No.
Blue Maxwest Cellular Phone,  )
IMEI: 353385100055472  )   **19MJ1874**
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-2 (incorporated herein)

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. 1324 | Transportation of and Bringing in Certain Aliens |

The application is based on these facts:
See Affidavit of Luis Reyes (incorporated herein)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Luis Reyes
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/7/19

City and state: San Diego, CA

*Judge's signature*

Hon. ~~Karen S. Crawford,~~ U.S. Magistrate Judge
*Printed name and title*
STANLEY A. BOONE

## AFFIDAVIT

I, Luis Reyes, having been duly sworn, declare and state as follows:

1. This affidavit is made in support of an application for a warrant to search:

    a. a silver Samsung cellular phone with IMEI: 352606/09/393931/0 (hereinafter "**Target Telephone 1**"), as more particularly described in Attachment A-1; and

    b. a blue Maxwest cellular phone with IMEI: 353385100055472 (hereinafter "**Target Telephone 2**"), as more particularly described in Attachment A-2;

collectively referred to as the **Target Telephones**.

2. On March 29, 2019, SOTO possessed both **Target Telephones**, which were seized from him when he was arrested by Border Patrol Agents for violations of Title 8, United States Code, Section 1324 (Alien Smuggling). Probable cause exists to believe that the **Target Telephones** contain evidence relating to violation of Title 8, United States Code, Section 1324. The **Target Telephones** are currently in the possession of the United States Border Patrol, Imperial Beach Station located at 1802 Saturn Blvd, Imperial Beach, California 92154.

3. Based on the information below, I have probable cause to believe that a search of the **Target Telephones** will produce evidence of the aforementioned crimes, as described in Attachment B, incorporated herein.

4. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the Application for a Search Warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am a Border Patrol Agent - Intelligence ("BPAI") with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed by the USBP since 2010, and am currently assigned to the San Diego Sector Intelligence Unit (SIU). SIU is tasked with the responsibility of investigating, arresting, and prosecuting criminal smuggling organizations that utilize the Southern District of

California as an operational corridor. These investigations are complex investigations of mid-level criminal smuggling organizations. SIU Agents deploy in plainclothes attire and drive unmarked agency vehicles.

6. During my tenure as a U.S. Border Patrol Agent, I have participated in the investigations of a number of criminal smuggling organizations, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants and the indictments of persons for alien and narcotics smuggling including drivers, narcotic distributers, foot guides, and load house operators.

7. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement of illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; the transportation and harboring of undocumented aliens within the United States; and the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by undocumented aliens to illegally gain entry and/or remain in the United States.

8. Through my training and experience, I have gained a working knowledge and insight into the typical workings of criminal organizations. I have also gained extensive information as to the normal operational habits of persons who make their living as alien and narcotics smugglers. Through my training, experience, and discussions with other experienced criminal investigators, I have become familiar with the behavior, speech, routes, and methods of operations of criminal organizations, to avoid detection and apprehension by law enforcement officers.

9. Through the course of my career, training, investigations, and conversations with other law enforcement personnel, I have become aware that it is a common practice for drug and alien smugglers to work in concert with other individuals and to do so by using cellular telephones, pagers and portable radios to maintain communications with co-conspirators to further their criminal activities. This is the case for any organization involved in the smuggling, trafficking, movement or distribution of illicit commodities, whether they be human cargo, controlled substances or other goods. Typically, organizations smuggling

California as an operational corridor. These investigations are complex investigations of mid-level criminal smuggling organizations. SIU Agents deploy in plainclothes attire and drive unmarked agency vehicles.

6. During my tenure as a U.S. Border Patrol Agent, I have participated in the investigations of a number of criminal smuggling organizations, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants and the indictments of persons for alien and narcotics smuggling including drivers, narcotic distributers, foot guides, and load house operators.

7. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement of illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; the transportation and harboring of undocumented aliens within the United States; and the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by undocumented aliens to illegally gain entry and/or remain in the United States.

8. Through my training and experience, I have gained a working knowledge and insight into the typical workings of criminal organizations. I have also gained extensive information as to the normal operational habits of persons who make their living as alien and narcotics smugglers. Through my training, experience, and discussions with other experienced criminal investigators, I have become familiar with the behavior, speech, routes, and methods of operations of criminal organizations, to avoid detection and apprehension by law enforcement officers.

9. Through the course of my career, training, investigations, and conversations with other law enforcement personnel, I have become aware that it is a common practice for drug and alien smugglers to work in concert with other individuals and to do so by using cellular telephones, pagers and portable radios to maintain communications with co-conspirators to further their criminal activities. This is the case for any organization involved in the smuggling, trafficking, movement or distribution of illicit commodities, whether they be human cargo, controlled substances or other goods. Typically, organizations smuggling

across the border, or to the interior from the border, are in telephonic contact with co-conspirators immediately prior to, during and following the smuggling event. These communications typically consist of instructions on how/where to cross or pick up contraband, directions of travel, and locations for delivery to stash houses and/or sponsors.

10. Human smugglers and their organizations use cellular telephones, in part, because these individuals believe law enforcement is unable to track the origination and destination phone numbers of calls placed to and from cellular telephones. Through the course of my career, I have arrested and interviewed numerous drug and human smugglers, and am familiar with the activities of those who coordinate trafficking events and the practices used for the drivers/smugglers they employ locally, including transportation methods and tactics used to communicate with the drivers and to avoid detection by law enforcement officers.

11. Based upon my training and experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, email, web, social networking websites, and voice messages.

    b. Alien smugglers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephones.

    c. Alien smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    d. Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations, to facilitate the further distribution of their illegal cargo inside the United States.

3

  e. Alien smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

  f. Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of U.S. Border Patrol checkpoints within the United States.

  g. Smuggled aliens will use their cellular telephones to coordinate their smuggling arrangements and the phones will often contain phone numbers of individuals involved in the smuggling event.

## FACTS SUPPORTING PROBABLE CAUSE

12. On March 29, 2019, Border Patrol Agent (BPA) Gerardo Hernandez, was assigned line watch duties within the Imperial Beach Border Patrol Station's area of operations. In this capacity, BPA Hernandez was dressed in full rough duty uniform and operating a marked agency vehicle, with fully functioning emergency lights and audible police sirens. Imperial Beach's area of responsibility is west of the San Ysidro, California Port of Entry and lies directly north of the United States/Mexico international boundary. This area is a well-documented alien smuggling route due to its close proximity to the United States/Mexico international boundary and quick freeway access into the interior of the United States.

13. At approximately 6:40 p.m., Border Patrol Agent (BPA) John Beaulieu, who was also assigned to line watch duties, advised agents in the field via service radio that he observed approximately fifteen individuals running from a waterway creek bed, known as the Smugglers Grates. He observed those individuals get into a white sports utility vehicle (SUV) that drove northbound out of the area at a high rate of speed. BPA John Bealieu described the SUV as a white Ford Explorer.

14. BPA Adrian J. Martinez was also assigned to the area at the time and was working in plainclothes, driving an unmarked Border Patrol vehicle. Upon hearing BPA Beaulieu's report, BPA Martinez responded to the north end of Smuggler's Canyon at Monument Road

4

and observed that the white SUV reported by BPA Beaulieu was in fact a white Ford Expedition and that the vehicle appeared heavily laden in the rear consistent with a vehicle that is loaded with excessive weight. BPA Martinez observed the Ford Expedition turn eastbound onto Monument Road. BPA Martinez also observed the driver and witnessed the driver operate the Ford Expedition in a reckless manner, nearly striking BPA Martinez's vehicle at one point and driving on the wrong side of the road against traffic. BPA Martinez relayed the vehicle's eastbound direction of travel on Monument Road via service radio and subsequently activated his vehicle's emergency lights and siren to stop vehicle traffic to allow BPA Martinez to turn around his vehicle. Due to the white Ford Expedition's travel and reports from other agents, BPA Martinez believed the white Ford Expedition contained undocumented aliens. BPA Martinez identified and confirmed the driver as SOTO later at the Imperial Beach Station after SOTO was taken into custody.

15. BPA Hernandez subsequently joined in the pursuit of SOTO's vehicle. Due to heavy traffic, SOTO narrowly avoided a collision with oncoming traffic by driving into the dirt shoulder nearly losing control and then continuing north along the shoulder next to the southbound lanes. At that moment, BPA Hernandez followed SOTO with his vehicle emergency lights and siren activated. SOTO continued to drive north on the wrong side of the road and failed to stop at the posted stop sign at the intersection of Servando Avenue and Dairy Mart Road. SOTO continued northbound over the Interstate 5 freeway bridge in the northbound lanes on Dairy Mart Road. SOTO continued northbound on Dairy Mart Road, failing to yield to BPA Hernandez's emergency lights and siren. At the intersection of Beyer Boulevard and Dairy Mart Road, SOTO again entered the oncoming lanes of traffic and travelled through a red light without stopping. He then turned left onto Beyer Boulevard and continued on Beyer Boulevard as it turns into Broadway in Chula Vista.

16. When SOTO approached the intersection of Broadway and Main Street, he again drove northbound in the southbound lanes of traffic on Broadway and at a high rate of speed. He turned left into the busy parking lot of a strip mall located near the intersection of Anita Street and Broadway. Despite the presence of pedestrians and without any apparent regard

1  for their safety, SOTO used a narrow alley on the west side in attempt to escape. SOTO emerged from the mall and drove into an apartment complex located at 1486 Broadway Chula Vista, CA 91911.

17. SOTO's vehicle stopped and BPA Hernandez observed SOTO exit the vehicle from the driver's side and run towards the apartment complex. Several other individuals ran out of the vehicle simultaneously. BPA Hernandez ran after SOTO without losing sight of him and eventually apprehended SOTO as he was running upstairs in one of the buildings. BPA Hernandez located two additional subjects from the Expedition outside of the apartment building hiding under a vehicle and arrested them as well. BPA Hernandez took the three subjects to his vehicle, and continued to search for other subjects. Other agents arrived and helped control the scene by detaining subjects from the Expedition and placing them into a Border Patrol transport van. In total, 10 subjects were taken into custody, including SOTO.

18. Once the scene was secure, BPA Hernandez approached the subjects in the transport van, identified himself as a United States Border Patrol Agent, and questioned them as to their citizenship. Each of the nine subjects stated they were citizens and nationals of Mexico and that they had no immigration documentation that would allow them to enter or remain in the United States legally. At approximately 7:00 p.m., BPA Hernandez arrested each of the nine subjects for violation of United States Code section 1325 Illegal Entry. BPA Hernandez then approached SOTO and questioned him as to his citizenship, SOTO claimed to be a United States citizen. BPA Hernandez arrested SOTO for violating Title 8 United States Code 1324, alien smuggling.

19. While SOTO was being searched, **Target Telephone 1** and **Target Telephone 2** were found in his possession.

## METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text messaging devices, can include cameras, can serve as personal digital

6

assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

23. Following the issuance of this warrant, I will collect the subject cellular telephones and, with assistance if necessary from cellular telephone forensic examiners, will attempt to securely power the device, identify whether it is protected by a personal identification

number (PIN), determine or circumvent the PIN and image or retrieve data subject to seizure pursuant to this warrant from the device. The search of the device or of an image on the data on the device will be limited to identifying and seizing data subject to seizure pursuant to this warrant and, in any event, will be limited to only the information to be found on basic cellular telephones: digital, cellular, and/or telephone numbers and/or direct connect numbers assigned to the device; call and direct connect history information; list of contacts stored on the device; text messages stored on the device; and, if equipped as a camera, photographs and videos stored on the device. In the event that I or other personnel lawfully conducting the analysis identify information pertaining to crimes outside the scope of this warrant, such information will not be used in any way unless a new warrant is obtained to search for such information.

24. I, or any other duly authorized federal agent, will personally serve the warrant requested above, and will be assisted by other duly authorized federal investigators.

## CONCLUSION

25. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that Jorge Antonio SOTO used the **Target Telephones** to facilitate human smuggling. The **Target Telephones** were likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence, fruits of the crime, and instrumentalities for violations of Title 8, United States Code, Section § 1324. I further believe that probable cause exists to believe that evidence, fruits of the crime and instrumentalities of illegal activity, committed by Jorge Antonio SOTO, continues to exist on the **Target Telephones**.

//
//
//
//
//
//

26. It is respectfully requested that this Court issue a warrant authorizing members of the United States Border Patrol or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to search the **Target Telephones** and seize evidence found therein.

I swear the foregoing is true and correct to the best of my knowledge and belief.

                Luis A. Reyes
                Border Patrol Agent
                U.S. Border Patrol

Subscribed and sworn to before me this __ day of May 2019.

                HONORABLE KAREN S. CRAWFORD
                UNITED STATES MAGISTRATE JUDGE

STANLEY A. BOONE

9

# ATTACHMENT A-2
# PROPERTY TO BE SEARCHED

A blue Maxwest cellular phone with IMEI: 353385100055472 seized from Jorge Antonio Soto on March 29, 2019. It is currently in the possession of the United States Border Patrol, Imperial Beach Station, located at 1802 Saturn Blvd, Imperial Beach, California 92154.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the Target Telephones described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the Target Telephones will be conducted in accordance with the "Procedure for Electronically Stored Information as to the Target Telephone" section of the affidavit submitted in support of the warrant.

The evidence to be seized from the Target Telephones described in Attachments A-1 and A-2 will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period from January 1, 2019 to March 30, 2019:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:
   a. tending to indicate efforts to smuggle and transport undocumented aliens from Mexico to the United States and within the United States;
   b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to smuggle undocumented aliens from Mexico to the United States and within the United States;
   c. tending to identify co-conspirators, criminal associates, or others involved in smuggling undocumented aliens from Mexico to the United States and within the United States;
   d. tending to identify travel to or presence at locations involved in the smuggling of undocumented aliens from Mexico to the United States and within the United States, such as stash houses, load houses, or delivery points.
   e. tending to identify the user of, or persons with control over or access to, the Target Telephone; or
   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

which are evidence of violations of Title 8, United States Code Sections 1324.